UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SHERRIE B.,

               Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

               Defendant.

Case No. 3:18-cv-05348-TLF

ORDER AFFIRMING DEFENDANT'S DECISION TO DENY BENEFITS

Sherrie B. has brought this matter for judicial review of defendant's denial of her application for disability insurance benefits. The parties have consented to have this matter heard by the undersigned Magistrate Judge. 28 U.S.C. § 636(c); Federal Rule of Civil Procedure 73; Local Rule MJR 13. For the reasons below, the undersigned affirms defendant's decision to deny benefits.

               I.     <u>ISSUES FOR REVEW</u>

1. Did the ALJ err at step two in not finding that plaintiff had "severe" mental-health impairments, and if so was this error harmless?

2. Did the ALJ err in weighing the medical opinion evidence?

3. Did the ALJ give adequate reasons to discount plaintiff's testimony?

ORDER AFFIRMING DEFENDANT'S DECISION TO
DENY BENEFITS - 1

4. Did the ALJ give adequate reasons to discount lay testimony from plaintiff's husband?

## II.     PROCEDURAL BACKGROUND

Plaintiff applied for disability insurance benefits in July 2012, alleging she became disabled as of November 1, 2004. Dkt. 11, Administrative Record (AR) 682. Her application was denied at the initial and reconsideration levels of administrative review. *Id.* After a hearing, an administrative law judge (ALJ) issued an unfavorable decision in June 2014. *Id.* Plaintiff appealed, and this Court remanded. *Id.*; *see* AR 780-800.

After another hearing, an ALJ issued another unfavorable written decision on January 4, 2018. AR 698; AR 705-46 (hearing transcript). Because plaintiff's date last insured was December 31, 2008, the relevant period for determining whether plaintiff was disabled is November 1, 2004, to December 31, 2008. AR 683.

The ALJ performed the five-step sequential analysis. AR 684-98. He determined that there were jobs existing in significant numbers in the national economy that plaintiff could perform, and therefore that plaintiff was not disabled during the relevant period. AR 696-98. Plaintiff filed a complaint with this Court, seeking reversal and remand for an award of benefits.

## III.     STANDARD OF REVIEW

The Court will uphold an ALJ's decision unless: (1) the decision is based on legal error; or (2) the decision is not supported by substantial evidence. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). This requires "more than a mere scintilla," though "less than a preponderance" of the evidence. *Id.*; *Trevizo v. Berryhill*, 871 F.3d 664, 674-75 (9th Cir. 2017).

1  The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). The Court is required to weigh both the evidence that supports, and evidence that does not support, the ALJ's conclusion. *Id.* The Court may not affirm the decision of the ALJ for a reason upon which the ALJ did not rely. *Id.*

"If the evidence admits of more than one rational interpretation," that decision must be upheld. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). That is, "'[w]here there is conflicting evidence sufficient to support either outcome,'" the Court "'must affirm the decision actually made.'" *Id.* (quoting *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)).

IV. <u>DISCUSSION</u>

The Commissioner uses a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520. At step four of that process, the claimant's residual functional capacity (RFC) is assessed to determine whether past relevant work can be performed, and, if necessary, at step five to determine whether an adjustment to other work can be made. *Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013). At step five, the Commissioner has the burden of proof, which can be met by showing a significant number of jobs exist in the national economy that the claimant can perform. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999); 20 C.F.R. § 404.1520(e).

A. <u>Step Two Severe Impairments Finding</u>

Plaintiff first asserts that the ALJ erred in finding, based on testimony from medical expert Joseph Carver, Ph.D., that plaintiff "had no psychiatric medically determined impairment diagnosed according to the standards of the Regulations," and that this error "undermined his entire decision." Dkt. 15, p. 3; AR 685. The Ninth Circuit has held that if an ALJ decides step two of the sequential evaluation in a claimant's favor, an error in failing to designate a particular

condition "severe" at step two is harmless. *Buck v. Berryhill*, 869 F.3d 1040, 1048-49 (9th Cir. 2017). Here, the ALJ decided step two in plaintiff's favor, and plaintiff concedes that the ALJ did consider mental-health limitations in assessing plaintiff's RFC. *See* AR 685, 687, 692-94. Accordingly, plaintiff has not identified any harmful error at step two.

B.      Medical Opinion Evidence

1.      Treating Physician Kari Lima, M.D.

A non-treating, non-examining source's opinion is generally entitled to less weight than a treating or examining source's opinion. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996). To reject the uncontradicted opinion of a treating or examining physician, an ALJ must provide "clear and convincing" reasons. *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)). When the treating or examining physician's opinion is contradicted, the ALJ may reject that opinion "by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* An ALJ "may reject the opinion of a non-examining physician by reference to specific evidence in the medical record." *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998).

Kari Lima, M.D., completed a medical source statement in June 2017, answering questions regarding plaintiff's conditions between November 1, 2004, and July 8, 2012. AR 944. She wrote that plaintiff had received treatment at the clinic where Dr. Lima worked since "at least 2006." *Id.* However, Dr. Lima did not begin treating plaintiff until 2014 – six years after the latest date in the relevant time period. *Id.* (As noted above, the relevant period for determining disability is November 1, 2004, to December 31, 2008. AR 683.)

Dr. Lima opined that plaintiff's depression, anhedonia, and paranoid thoughts prevented plaintiff from following through with most recommended testing and treatment. AR 944, 947.

She opined that plaintiff would have many limitations in her ability to work, including that her psychiatric symptoms, including depression, would require her to take frequent and variable unscheduled breaks. She also opined that plaintiff would be physically limited due to venous insufficiency and edema, limiting her ability to stand and sit and requiring that she be able to elevate her legs "as much as possible." AR 944-45.

The ALJ gave Dr. Lima's opinion "limited weight." He found that the opinion was "not consistent with the longitudinal record"; he observed that Dr. Lima was unable to find treatment notes for the entire period at issue; he found that Dr. Lima's "opinion is dated well after the time period at issue"; and he found that, "as noted by [reviewing expert] Dr. Carver, there are no treatment records that support Dr. Lime's [sic] opinion." AR 693-94.

These were specific and legitimate reasons to reject Dr. Lima's opinion, and substantial evidence supports them.

First, the ALJ observed that Dr. Lima gave her opinion well after the relevant period. "[R]eports containing observations made after the period for disability are relevant to assess the claimant's disability." *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988). This is because "medical reports are inevitably rendered retrospectively and should not be disregarded solely on that basis." *Id.*

Nonetheless, an ALJ may disregard an opinion made outside the relevant period if the ALJ gives sufficient reasons. *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010) (date of "other source" opinion, rendered outside relevant period, was germane reason to not address it); *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008) (opinion on conditions predating relevant period had limited relevance); *Johnson v. Astrue*, 303

F. App'x 543, 545 (9th Cir. 2008) (unpublished) (affirming ALJ's rejection of medical opinions that were remote in time and reliance on more recent opinions).

Dr. Lima did not begin treating plaintiff until six years after the relevant period and completed the medical-source statement over eight years after the relevant period. AR 944. (Relatedly, the form opinion pertained to the period from November 1, 2004, to July 8, 2012, AR 944, and did not specify what conditions were present during the relevant period.)

The ALJ could validly find that Dr. Lima's opinion was entitled to less weight because it was too remote and therefore less relevant; dated many years after the relevant period. *See Johnson*, 303 F. App'x at 545.

Second, the ALJ found that Dr. Lima's opinions lacked support from treatment notes. AR 693-94. Dr. Carver's testimony supports this finding. *See* AR 720-24. Further, plaintiff does not cite any treatment notes that would support the severe limitations Dr. Lima found. *See* Dkt. 15, pp. 8-10. As discussed below, the treatment notes in the record do not show plaintiff to be severely limited—due to either her leg conditions, *see* AR 368 ("small" amount of edema), AR 369-70 (negative straight-leg-raise tests, normal strength and sensation, and intact hip range-of-motion), 417 (normal musculoskeletal signs), or her mental-health conditions, *see* AR 327, 428, 480 ("normal" mental status results). The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in medical evidence, and substantial evidence supports his conclusions in this case. *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

2. <u>Reviewing Physicians Harvey Alpern, M.D., and Nossa Maya, M.D.</u>

Dr. Alpern and Dr. Maya testified as medical experts at plaintiff's 2014 and 2017 ALJ hearings, respectively.

The ALJ gave "great weight" to Dr. Maya's opinion on plaintiff's physical limitations, in part because the ALJ found her opinion consistent with that of Dr. Alpern. AR 692. Dr. Alpern

testified that it is "usually" sufficient for a person with plaintiff's conditions to elevate the legs "10 minutes mid-morning, 30 minutes midday, and 10 minutes mid-afternoon, in addition to unrestricted in the morning and unrestricted in the evening," although "[s]ome people who don't work elevate a lot more. Some people that do work elevate less." AR 44-45.

Plaintiff asserts that "the ALJ errs by failing to accurately describe these medical opinions." Dkt. 15, p. 10. She contends that the ALJ erred in relying on Dr. Maya and Dr. Alpern's opinions because Dr. Alpern "did not state that" the amount and frequency of leg elevation he specified "would have been sufficient for *[plaintiff]*" and "Dr. Alpern did not clearly define how much time [plaintiff] would have to elevate her legs." Dkt. 15, p. 11.

This Court discussed and rejected this argument in plaintiff's prior appeal. AR 794-96. "The law of the case doctrine generally prohibits a court from considering an issue that has already been decided by that same court or a higher court in the same case." *Stacy v. Colvin,* 825 F.3d 563, 67 (9th Cir. 2016). Plaintiff makes no argument that this case involves the narrow circumstances in which a court should decline to apply the law of the case doctrine. *See Merritt v. Mackey*, 932 F.2d 1317, 1320 (9th Cir. 1991). Accordingly, plaintiff's argument regarding the ALJ's consideration of Dr. Alpern's opinion has no merit.

Plaintiff also recounts several parts of Dr. Maya's testimony and contends that it "supports Dr. Lima's opinion that Berg would need to elevate her legs 'as much as possible.'" Dkt. 15, p. 11; *see* AR 946. Plaintiff asserts that "Dr. Maya never considered Berg's testimony about how often she actually needed to elevate her legs." But plaintiff offers no support for this assertion. Nor does she cite any authority indicating that a reviewing medical expert is required to credit a claimant's testimony. Thus, although plaintiff argues for a different interpretation of Dr. Maya's testimony, she does not identify any legal error in the ALJ's decision to accord

ORDER AFFIRMING DEFENDANT'S DECISION TO
DENY BENEFITS - 7

"great weight" to Dr. Maya's opinion. *See* AR 692; *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

        3.      <u>Reviewing Physician Joseph Carver, Ph.D.</u>

Plaintiff asserts that the ALJ erred in giving "significant weight" to Dr. Carver's opinion because "Dr. Carver misunderstood or misread the evidence," Dkt. 15, p. 11, referring to the reasons plaintiff identifies in her argument that the ALJ erred at step two. In that argument, plaintiff lists treatment notes that, she asserts, contradict Dr. Carver's testimony. Dkt. 15, p. 4. But she does not explain with any specificity how this is so and thus fails to identify any error. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 116 n.2 (9th Cir. 2008) (noting that court "'ordinarily will not consider matters on appeal that are not specifically and distinctly argued in an appellant's opening brief'") [quoting *Paladin Assocs., Inc. v. Mont. Power Co.*, 328 F.3d 1145, 1164 (9th Cir. 2008)]). To the extent that plaintiff proposes a different interpretation of the evidence, her argument does not show that the ALJ's interpretation was *not* reasonable. *See Burch*, 400 F.3d at 679.

        4.      <u>Examining Psychologists Kimberly Wheeler, Ph.D., and Keri Tarantino, Psy.D.</u>

Plaintiff also asserts that the ALJ erred in rejecting the 2012 opinions of Dr. Wheeler and Dr. Tarantino. AR 693; *see* AR 628, 635. The ALJ found that those opinions were "based on one-time evaluations that occurred well outside of the relevant time period. Accordingly," the ALJ concluded, "they do not proved evidence of probative value in assessing the claimant's functioning during the time period at issue." AR 693.

The ALJ also responded to plaintiff's argument that because her impairments are longstanding, "evidence of later functional limitations relates back to the time period at issue": citing Dr. Carver's testimony, the ALJ concluded that even if plaintiff "had personality disorder

or mental health impairments during the relevant time period, the overall evidence does not demonstrate disabling functional limitations from any mental health condition." *Id.*; *see* AR 723-24 (Dr. Carver testified that plaintiff's impairments "could be accommodated by just occasional contact with the general public, . . . workers[,] and supervisors").

Plaintiff correctly points out that the ALJ could not reject Drs. Wheeler and Tarantino's opinions solely because they were based on one-time examinations. *See* 20 C.F.R. § 404.1527(c)(i) (citing the "frequency of examination" as one factor used to weigh medical opinions); *Williams v. Colvin*, 24 F. Supp. 3d 901, 914 (N.D. Cal. 2014) ("The fact of a one-time examination, without any analysis or assessment as to the nature and quality of that examination, is not a sufficient basis for the ALJ's decision to reject Dr. Johnson's opinion.").

Nonetheless, the ALJ's reasons were specific and legitimate when taken together. The ALJ considered the four-year gap between the relevant period and Drs. Wheeler and Tarantino's opinions. The ALJ noted that diagnoses do not demonstrate functional limitations, and he found that Dr. Carver's testimony, which specifically pertained to the relevant period, was more probative of plaintiff's functional limitations during that period. These were valid consideration in weighing Drs. Wheeler and Tarantino's opinions.

Plaintiff asserts that "these opinions are significant because they provide further support for Dr. Lima's opinion." The ALJ's reasons, and the Court's analysis for affirming the ALJ's rejection of Dr. Lima's opinion, are discussed in part IV.B.1, above.

5. Reviewing Psychologist John F. Robinson, Ph.D.

Plaintiff devotes a subsection of her brief to summarizing Dr. Robinson's reviewing opinion and the ALJ's decision to give it "no weight." Dkt. 15, p. 12; *see* AR 110, 658, 694. Plaintiff asserts only that "this opinion is consistent with and provides further support for Dr.

1 Lima's opinion." Dkt. 15, p. 12. Plaintiff does not specifically and distinctly identify any error in

2 the ALJ's discussion. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2

3 (9th Cir. 2008); *see also Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (holding that the

4 burden of showing harmful error falls on the party attacking an agency's determination).

5 C.      <u>Plaintiff's Testimony</u>

6 Plaintiff challenges the ALJ's decision to discount her testimony about the nature and

7 severity of her symptoms. Plaintiff testified about her impairments as she experienced them

8 during the relevant period—specifically lymphedema (leg swelling) and depression. AR 56-58,

9 64-66. First, plaintiff summarizes treatment notes that contain observations about plaintiff's

10 lymphedema (leg swelling) and her mental health conditions. Dkt. 15, pp. 5-8. It appears that

11 plaintiff is arguing that the treatment record considered as a whole shows that her testimony

12 should not have been discounted by the ALJ. Dkt. 15 at 8.

13 In weighing a plaintiff's testimony, an ALJ must use a two-step process. First, the ALJ

14 must determine whether there is objective medical evidence of an underlying impairment that

15 could reasonably be expected to produce some degree of the alleged symptoms. *Trevizo v.*

16 *Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). If the first step is satisfied and there is no evidence

17 of malingering, the second step allows the ALJ to reject the claimant's testimony of the severity

18 of symptoms if the ALJ can provide specific findings and clear and convincing reasons for

19 rejecting the claimant's testimony. *Id.*

20 Here, the ALJ gave clear, convincing, and supported reasons for discounting plaintiff's

21 testimony regarding both her lymphedema and her mental health.

22 First, the ALJ found that the degree of limitations plaintiff alleged was inconsistent with

23 the objective evidence in the record. AR 688. Inconsistency with objective evidence can satisfy

24 the clear and convincing requirement. *Regennitter v. Commissioner of Social Sec. Admin.*, 166

25

F.3d 1294, 1297 (9th Cir. 1998). But an ALJ may not reject a claimant's subjective symptom testimony "*solely* because the degree of pain alleged is not supported by objective medical evidence." *Orteza v. Shalala*, 50 F.3d 748, 749-50 (9th Cir. 1995) (internal quotation marks omitted and emphasis added); *Byrnes v. Shalala*, 60 F.3d 639, 641-42 (9th Cir. 1995) (applying rule to subjective complaints other than pain).

Substantial evidence supports the ALJ's finding that the objective evidence undermines plaintiff's testimony about her leg condition. Plaintiff was noted to have a "small" amount of edema in April 2006. AR 368. At a physical therapy clinic in February 2007, she showed negative straight-leg-raise tests, normal strength and sensation in the legs, and intact range of motion in the hips. AR 369-70. Her provider noted lymphedema in March 2008 and referred her to a lymphedema clinic, while advising that weight loss would improve her symptoms in general. AR 418. Plaintiff showed normal musculoskeletal signs on examination. AR 417. At a May 2008 visit, plaintiff's provider did not note any physical-exam findings other than that plaintiff was overweight. AR 411. As the ALJ noted, plaintiff showed leg swelling in April 2008. The record shows that plaintiff received treatment for this condition over the next five months and that it improved "dramatically." AR 689; *see* AR 430, 439, 444, 449, 450, 556 (reporting that "pain overall has dramatically decreased" with treatment).

Accordingly, the ALJ could reasonably conclude that the objective evidence is inconsistent with plaintiff's allegation that she had to elevate her legs constantly due to lymphedema.

Second, the ALJ found that the limitations plaintiff alleged were also inconsistent with the amount of treatment she needed or sought during the relevant period. AR 688. This, too, can

provide a clear and convincing reason to discount a plaintiff's symptom testimony. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *Trevizo*, 871 F.3d at 680.

Substantial evidence supports this reasoning with respect to plaintiff's leg condition. Plaintiff's physician advised her to elevate her legs "regularly" in July 2006. AR 366. At other visits, her providers did not advise or discuss elevating her legs. *See* AR 368, 418, 450. Lymphedema did not become a focus of treatment until March 2008. AR 430. When it was treated, it improved greatly. AR 556. The ALJ accounted for the Dr. Alpern's testimony that it is "usually sufficient for someone with plaintiff's to elevate the legs "10 minutes mid-morning, 30 minutes midday, and 10 minutes mid-afternoon, in addition to unrestricted in the morning and unrestricted in the evening," AR 44-45, and the Dr. Maya's testimony that plaintiff would not need to elevate more often than once every two hours in an eight-hour workday, AR 730, 734. Plaintiff again has not shown that the ALJ's findings were unreasonable. *See Reddick*, 157 F.3d at 722 (ALJ responsible for determining credibility and resolving ambiguities and conflicts in medical evidence).

Substantial evidence also supports the ALJ's finding that plaintiff's allegations about her mental health were inconsistent with the amount of treatment recommended and sought during the relevant period. Plaintiff's provider noted in January 2005 that plaintiff reported stress about her living situation and showed paranoid ideation and discussed seeking counseling and taking medications. AR 484 (noting plaintiff appeared her usual self, though having "what appears to be paranoid ideation"). In January 2005, she had not started the medication (Wellbutrin), and no remarkable mental signs were noted. AR 483.

In March 2005, her provider again noted no signs, while writing that "[s]he again declines any other help with her stress issues." AR 480. In March 2006, her provider noted

"mental status normal," though plaintiff appeared anxious and stressed. AR 327. In August 2006, her provider noted she had "poor" compliance with treatment and had not started a medication (Celexa) because of fears about side effects and because "it was very hot." AR 362.

She had a "normal" mental status in January 2007. AR 352. The next month, she "appear[ed] somewhat depressed and anxious," but no additional treatment was recommended. AR 344. She again had an anxious mood in July 2007, but she also continued to avoid medications. AR 385. In March 2008, she showed poor insight and mild paranoid ideation, though she was fully oriented and showed intact memory. AR 417-18. She declined to talk about therapy. *Id.* She declined Wellbutrin for depression in May 2008 and was prescribed Celexa instead. AR 410, 412. Later that month, she showed a "good initial response" to Celexa, improved affect, and a "normal" mental status. AR 428.

An ALJ may discount a plaintiff's pain testimony based on an "'unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment.'" *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (quoting *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008)). The ALJ may not do so "without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." SSR 16-3p, at *9. The Ninth Circuit has "particularly criticized the use of a lack of treatment to reject mental complaints both because mental illness is notoriously underreported and because 'it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.'" *Regennitter*, 166 F.3d at 1299–1300.

Here, the ALJ adequately considered plaintiff's reasons for not seeking more extensive mental-health treatment during the relevant period. *See* SSR 16-3p, at *9. Plaintiff does not support her assertion that "every physician who discussed this issue agreed that Berg's paranoid

personality disorder is the reason she is resistant to treatment," Dkt. 15, pp. 13-14. Rather, the only provider to make this explicit connection appeared to be Dr. Lima. AR 944, 947. Dr. Carver testified that the record showed plaintiff's "paranoid personality" may have made her resistant to seeking treatment and examinations and contributed to her "inappropriate response[s]" during Dr. Wheeler's examination. AR 715-18. The providers who treated plaintiff during the relevant period did not find that her mental-health conditions were preventing her from seeking treatment. *See, e.g.*, AR 344, 418, 480.

The ALJ reviewed both the objective mental-status findings and the evidence that paranoia made plaintiff resistant to more extensive mental health treatment. AR 690-91. He reasonably concluded that plaintiff's report of debilitating mental-health conditions was inconsistent with the amount of treatment she sought and was prescribed. AR 690. Although the record indicates that psychological conditions contributed to plaintiff's reluctance to seek treatment, the record also supports the ALJ's finding that even with limited treatment plaintiff's mental-health conditions did not significantly limit her. *See* AR 344, 352, 428, 483, 484 (mental-status exams); AR 723-24 (Dr. Carver testimony on workplace limitations).

Accordingly, there is substantial evidence to support the ALJ's decision to discount plaintiff's testimony.

D.    <u>Lay Testimony</u>

Plaintiff assigns error to the ALJ's decision to give "limited weight" to the testimony of plaintiff's husband. Plaintiff asserts only that the ALJ's reasons "are not supported by substantial evidence, and they are not germane to" plaintiff's husband. Dkt. 15, p. 17. She does not support this conclusory assertion with any argument. Accordingly, the Court does not address it. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008); *Independent Towers of Washington v. Washington*, 350 F.3d 925, 929-30 (9th Cir. 2003).

## CONCLUSION

Based on the above analysis, plaintiff has not identified a reversible error in the ALJ's decision. Accordingly, the Defendant's decision to deny benefits is AFFIRMED.

Dated this 19th day of August, 2019.

Theresa L. Fricke
United States Magistrate Judge